UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH B. FURMAN,   Civil Action No.: 17-12857
  Honorable Linda V. Parker
       Plaintiff,   Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 13, 20]**

Plaintiff Keith Furman appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Furman's motion [ECF No. 13] be **GRANTED**;

- the Commissioner's motion [ECF No. 20] be **DENIED**; and

- the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and

recommendation.

I.   **BACKGROUND**

   A.   **Furman's Background and Disability Applications**

Born August 2, 1963, Furman was 50 years old on the alleged disability onset date of May 20, 2014. [ECF No. 9-2, Tr. 18]. He has past relevant work as a diesel mechanic, mechanic supervisor and motor winder. [*Id.*]. Furman claims disability due to degenerative joint disease, degenerative disc disease of the lower spine and lumbar/thoracic radiculitis, as well as depression. [*Id.*, Tr. 12, 29].

After a hearing on June 15, 2016, during which Furman and a vocational expert (VE) testified, the ALJ found that Furman was not disabled. [*Id.*, Tr. 10-49]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6]. Furman timely filed for judicial review. [ECF No. 1].

   B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

Applying this framework, the ALJ concluded that Furman was not disabled. At the first step, she found that Furman had not engaged in substantial gainful activity since the alleged onset date of May 20, 2014. [ECF No. 9-2, Tr. 12]. At the second step, she found that Furman had the severe impairments of "degenerative joint disease, degenerative disc disease of the lumbar spine, and lumbar/thoracic radiculitis." [*Id.*]. She found that Furman suffered the non-severe impairments of obesity, history of coronary artery disease status post-stent placement, hyperlipidemia, nicotine abuse, generalized anxiety disorder and depressive disorder. [*Id.*, Tr. 13]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 14-15].

Between the third and fourth steps, the ALJ found that Furman had the RFC to perform light work, except that:

> [H]e cannot climb ladders, ropes, or scaffolds but can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. He can occasionally push and pull with the left lower extremity. [He] must avoid concentrated exposure to hazards including work at unprotected heights. There should be no strict production demands [and he] must be allowed to change from standing to seated or vice versa for up to two minutes every one to two hours without interference with work product.

[*Id.*, Tr. 15]. At step four, the ALJ found that Furman was not capable of performing his past relevant work as a diesel mechanic, mechanic

4

supervisor and motor winder. [*Id.*, Tr. 18]. At the final step, after considering Furman's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Furman could perform, including positions as bench assembler, inspector, and sorter. [*Id.*, Tr. 19].

## II.  ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Furman argues the ALJ erred by not properly weighing the opinions of his treating physicians and the consultative psychological examiner. He also argues the ALJ erred by not properly considering the third-party

5

function report completed by Furman's wife and by not including his use of a cane in his RFC. The Court concludes that the ALJ violated the treating physician rule and that she failed to cite to evidence in the record supporting her conclusions, thus precluding meaningful review.

## A.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

The ALJ assessed the opinions of treating physicians Victor Gordon, D.O., and George Elias, D.O., regarding the severity of Furman's physical limitations and assigned them little weight. [ECF No. 9-2, Tr. 17; ECF No. 9-7, Tr. 313-18, 322-24]. Dr. Gordon opined that Furman was incapable of even low stress jobs, and that he could sit or stand for only five minutes at a time, and sit and stand/walk for less than two total hours during the workday. [*Id.*, Tr. 313-14, 322-24]. He cited pain associated with positive EMG and MRI findings, as well as neurogenic weakness in nerve distribution as the clinical findings and objective signs supporting his opinion. [*Id.*] Dr. Elias concluded that Furman could rarely lift ten pounds and that he would miss more than four days of work per month.[2] [*Id.*, Tr. 315-17]. Despite citing evidence of medical exams showing positive facet signs, positive Spurling test, positive straight leg raising and diminished lower extremity reflexes, along with some sensory loss and an antalgic gait,

---

[2] Courts in this district have routinely held that a doctor's statement that an individual would be unable to work several days per month is not a valid medical opinion, but an opinion on an issue reserved to the Commissioner. Such statements are thus not entitled to any deference. *See Schacht v. Comm'r of Soc. Sec.* 2016 WL 2733140, at *5 (E.D. Mich. May 5, 2016), *adopted,* 2016 WL 5219540 (E.D. Mich. Sept. 22, 2016).

the ALJ concluded Dr. Gordon and Dr. Elias's opinions were inconsistent with the record evidence as a whole.  [ECF No. 9-2. Tr. 17].  To support this conclusion, she stated that Furman was "noted to have good and bad days in the treatment notes and he increased his activities levels at time."  [*Id*].

This reasoning does not establish good reasons for failing to give controlling weight to Furman's treating physician's opinions.  The ALJ did not cite to any specific evidence at any point in her decision that would show that Furman's increased activity "*at times*" was comparable to typical work activities.  See *Rogers,* 486 F.3d at 248 (noting that the plaintiff's minimal daily functions were "not comparable to typical work activities").  And, in fact, Furman's intermittent bad days may render him incapable of maintaining a working career.  *Adamczyk-Drummond v. Colvin*, 2017 WL 710063, at *7 (E.D. Mich. Jan. 26, 2017), *adopted*, 2017 WL 697071 (E.D. Mich. Feb. 22, 2017) (plaintiff's intermittent bad days may have rendered her incapable of gainful employment).

And when it comes to the treating physician rule, an ALJ is required to "articulate" the "good reasons," and courts will not hesitate to remand when an ALJ fails to do so.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).  This procedural safeguard permits "meaningful

8

appellate review," and ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.3d at 242-43 (internal quotation marks and citation omitted). In an effort to bolster the ALJ's conclusory reasoning, the Commissioner cites to evidence not referenced by the ALJ. [ECF No. 20, PageID.523-24]. For example, the Commissioner cites to a medical record indicating that Furman had injured his back when a co-worker dropped a crib in September 2015, and another stating that Furman worked four to five days a week in October 2015. [*Id.*, citing ECF No. 9-7, Tr. 408, 410]. But the ALJ never referred to those notations in the medical record, and she did not confront Furman with those records during the June 2016 hearing when he testified that he had no current source of income, and that his impairments prevented him from working. [ECF No. 9-7, Tr. 31, 33].

     The records upon which the Commission relies may reflect only a failed attempt to return to work and, as such, this case exemplifies the sound reasoning underlying the rule that, "[i]n reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks, brackets, and citation omitted).

Here, the ALJ's failure to adequately articulate her reasoning renders it impossible for the Court to conduct a meaningful review. For this reason, the Court recommends that this matter be remanded for reconsideration of the weight given to Dr. Gordon's and Dr. Elias's opinions regarding the severity of restrictions Furman required.[3] To the extent that the ALJ still does not fully credit those doctors' opinions, she should be required to articulate her reasoning and reference specific evidence in the record.[4]

**B.**

The Court finds Furman's argument that the ALJ should have found him to suffer from a severe mental impairment to be without merit. In October 2014, consulting examiner Hugh Bray, Ph.D., completed a mental

---

[3] Because the Sixth Circuit requires perceptible weight must be given to lay testimony where it is fully supported by the reports of treating physicians, the ALJ should also on remand reassess the third-party function report provided by Furman's wife. *See Kelly v. Comm'r of Soc. Sec.*, 2016 WL 8115402, at *10 (E.D. Mich. July 22, 2016) (citing *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983)).

[4] Furman emphasizes the portion of Dr. Elias's opinion that his impairments would cause him to be absent about twice a month, but that was not a medical opinion to which the ALJ was required to defer. *Stojic v. Comm'r of Soc. Sec.*, No. 1:14-CV-1133, 2015 WL 9238986, at *4 (W.D. Mich. Dec. 17, 2015) (doctor's "predictions of how often Plaintiff would likely be off task and miss work were conjecture, not a medical opinion"); *Morgan v. Comm'r of Soc. Sec.*, No. CV 15-12988, 2016 WL 5402940, at *9 (E.D. Mich. July 15, 2016), *adopted*, No. 15-12988, 2016 WL 5369616 (E.D. Mich. Sept. 26, 2016) (prediction that claimant will miss work or be off task not a medical opinion entitled to deference).

status evaluation on Furman. [ECF No. 9-7, Tr. 347-351]. Dr. Bray opined a mild impairment in Furman's ability to understand, remember and carry out tasks, both minimal and more complex, but reported moderate impairment in Furman's ability to maintain attention, concentration and persistence and significant impairment in his "ability to withstand stress and pressure associated with day to day work activities." [*Id.*, Tr. 350-51].

The ALJ afforded Dr. Bray's opinion little weight, finding that his conclusions were based on a one-time examination and the evidence as a whole did not confirm the degree of limitations that he described. [ECF No. 9-2, Tr. 14]. The ALJ noted that Furman's relatively modest ongoing mental symptoms and minimal treatment suggested that his mental conditions were not severe. [*Id.*]. Furman argues that the ALJ did not set forth a valid basis for dismissing Dr. Bray's opinion regarding his moderate impairment in ability to maintain attention, concentration, persistence and pace and his significant impairment in his ability to withstand stress and pressure associated with every day work activities. Furman contends that the ALJ merely substituted her own medical judgment for that of Dr. Bray. [ECF No. 13, PageID.485-486]. The Court disagrees.

The ALJ is charged with considering all of the evidence and assessing the claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.

11

App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). And contrary to Furman's argument, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Id.*

An ALJ is required to consider every medical opinion of record, 20 C.F.R. § 404.1527, but because Dr. Bray was not a treating physician, the ALJ was not required to defer to his opinion. Instead, "in weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*, No. 4:15CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). Those factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. § 404.1527(c)(2)-(6). But there is no rule that requiring an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The Court finds that the ALJ sufficiently considered Dr. Bray's opinion and the record as a whole, and that substantial evidence supports her

determination that Dr. Bray's opinion was entitled to little weight. With respect to the first two regulatory factors, Dr. Bray examined Furman once; they did not have an ongoing treatment relationship. Concerning the third factor—supportability of the opinion—Dr. Bray cited Furman's "reports that his pain level impacts his attention," but observed that his attention, persistence and effort during the examination were average. [*Id.*, Tr. 350].

The record as a whole, pertinent to the fourth factor, does not evidence moderate or significant mental impairments. Dr. Bray noted that Furman was not receiving mental health treatment or medication. [*Id.*, Tr. 347-348]. And Furman and his wife specifically denied any difficulties with attention, following instructions and changes in routine, and reported only slight difficulties with stress. [ECF No. 9-6. Tr. 254-55, 262-63]. These inconsistencies in the record support the ALJ's determination that Dr. Bray's opinion was worth little weight. *See West v. Comm. of Soc. Sec.*, 240 F. App'x 692, 697 (6th Cir. 2007) (ALJ did not err by rejecting medical opinion contradicted by claimant's own statements). The evidence that Furman cites may be supportive of Dr. Bray's opinion, but "[i]f the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip*

*v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

Further, the ALJ did not err by affording greater weight to the opinion of the state agency advisor, Dyan Hampton-Aytch, Ph.D., who reviewed Furman's medical records, than to that of Dr. Bray, who examined Furman once. An ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App's 267, 274–75 (6th Cir. 2015); 20 C.F.R. § 404.1527. Thus, an ALJ may provide greater weight to a state agency physician's opinion when it is supported by evidence in the record. *Id.; see also Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). As discussed above, Dr. Hampton-Aytch's opinion that Furman's mental impairments were not severe was supported by a record reflecting minimal mental health treatment and denials of any problems with concentration and persistence by both Furman and his wife. Remand for further consideration of Furman's mental impairments is not warranted.

**C.**

Furman's remaining argument—that the ALJ failed to incorporate his use of a cane for ambulation in the RFC— does not warrant remand. The Commissioner concedes that the ALJ erred in failing to incorporate Furman's use of a cane in the RFC. But the Commissioner contends that the error is harmless because the VE testified that a hypothetical individual needing to use a cane, and otherwise matching Furman's characteristics and RFC, could still do the inspector and sorter jobs she previously identified. [ECF No. 9-2, Tr. 46]. The Court agrees.

> Under these circumstances, any error by the ALJ in failing to include plaintiff's need to use a cane for walking and standing is harmless because the vocational expert specifically testified that a significant number of jobs in the light work category were available for a person with plaintiff's RFC as stated by the ALJ and who needed to use a cane for walking and standing. Thus, a remand is not necessary.

*Scott v. Comm'r of Soc. Sec.,* 2015 WL 4634077, at *7 (E.D. Mich. July 6, 2015), *adopted*, 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015).

Nonetheless, upon remand, the ALJ should be ordered to properly account for Furman's use of a cane when reassessing the RFC determination.

### III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Furman's motion [ECF No. 13] be **GRANTED**; that the Commissioner's

15

motion [ECF No. 20] be **DENIED**; and that this matter be **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 15, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2018.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager